UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RICHARD CHARLES ELINE, CIVIL NO. 00-42 (MJD/JMM)

Plaintiff,

v. REPORT AND RECOMMENDATION

C. WALTER, M. ARNDT,
and K. EHRENBERG,

Defendants.

The above matter is before the undersigned upon Defendants' Motion to Dismiss and for Summary Judgment [Docket No. 14]. The matter was referred to the undersigned by Judge Michael J. Davis for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Defendants' Motion to Dismiss [Docket No. 14] be granted because Plaintiff did not exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). As a result, it is recommended that Plaintiff's Complaint be dismissed without prejudice.

## FINDINGS OF FACT/REPORT

### Background

Plaintiff is a prisoner of the State of Hawaii currently incarcerated at the Prairie Correctional Facility (PCF) in Appleton, Minnesota, which is a private prison facility operated by the Corrections Corporation of America (CCA). The Hawaii Department of Public Safety has contracted with the Appleton Economic Development Authority and CCA for the housing of some of Hawaii's adult male inmates [John W. Riches, II, Affidavit, Docket No. 17].

FILED NOV 09 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

Plaintiff filed this Complaint against Defendants in their individual capacities on January 10, 2000 [Docket Nos. 1 and 2]. Defendants are employees of CCA who work at PCF. A First Amended Complaint was filed on February 25, 2000 [Docket No. 7] alleging violations of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983. Plaintiff's claims arise out of the following set of facts involving an allegedly false disciplinary report and the use of force by Defendants against Plaintiff.

On October 27, 1999, Defendant Walter wrote a disciplinary report citing Plaintiff for a violation of the code of penal discipline. [Docket No. 13, ¶ 2]. Plaintiff states that the report was libelous and malicious [Docket No. 7, ¶ 11]. Defendants deny the allegation [Docket No. 13, ¶ 2].

On November 26, 1999, prison staff were returning Plaintiff to his assigned cell following 30 days in segregation for the allegedly libelous discipline incident. Plaintiff refused to enter his cell, became agitated and began yelling at staff. After a warning, Defendant Arndt maced Plaintiff's eyes with a tear gas component. [Docket No. 7, ¶ 12]. Following the macing, Defendant Walter, and at least four other correctional officers, used force to restrain Plaintiff. According to the Plaintiff, the force was excessive and amounted to a beating. Plaintiff heard the Officers threaten other inmates who observed the incident not to say anything or "they would get the same as Plaintiff." [Docket No. 7, ¶ 12]. Plaintiff believes the incident is representative of a pattern and practice of unreasonable use of force permitted at PCF. [Docket No. 7, ¶ 17].

Plaintiff alleges Defendants beat him on November 26, 1999 in retaliation for filing a lawsuit about the libelous report. [Docket No. 1]. Defendants admit to using force against Plaintiff, but state that the force was reasonably used in an effort to maintain discipline and restrain Plaintiff who refused to follow reasonable directives. [Docket No. 13,

¶ 3]. The Amended Complaint alleges that Defendant Ehrenberg encouraged and assisted the excessive use of force; interfered with the delivery of legal and personal mail to Plaintiff; allowed money to be taken from his account; and withheld from Plaintiff information in his restricted and unrestricted files. [Docket No. 7, ¶ 13]. Defendant Ehrenberg denies all allegations. [Docket No. 13, ¶ 4].

Plaintiff is aware of grievance procedures available at PCF but did not use that process to bring the above complaints to the attention of prison officials. In his Amended Complaint, Plaintiff hints at, but never clearly articulates, an allegation that the administrative process established to review officer conduct is ineffective and dishonest. [Docket No. 7, ¶¶ 18 and 19].[1] In his original Complaint, Plaintiff explained that he did not use the grievance procedure because it "does not apply where facility is not listed by Bureau of Prisons" based on Huguenin v. Ponte, 29 F. Supp.2d 57 (D.R.I. 1998). [Docket No. 1].

## Discussion

Plaintiff seeks compensatory and exemplary relief under 42 U.S.C. § 1983 with a number of different theories. He alleges unreasonable and excessive use of force, with actual malice and deliberate indifference to his civil rights in violation of the Fourth,

---

1

Paragraph 18 states: "Upon information and belief, Defendants have maintained a system of review of conduct which is so untimely and cursory as to be ineffective and to permit and tolerate the unreasonable and excessive use of force by Defendants." Paragraph 19 states: "The acts, omissions, systematic flaws, policies and customs caused Defendants to believe that excessive and unreasonable use of force would not be aggressively, honestly, and properly investigated with the foreseeable result that Defendants are more likely to use excessive force against Plaintiff and others in the future." [Docket No. 7, §§ 18 and 19].

Fifth and Eighth Amendments to the United States Constitution. He further seeks relief for assault and battery, intentional infliction of emotional distress, negligence, respondeat superior, malicious abuse of process, false arrest, false imprisonment, denial of property, and denial of medical care.

Defendants argue that the Complaint should be dismissed for failure to state a claim upon which relief can be granted because Plaintiff has not exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA). Defendants further argue for dismissal of Plaintiff's claim for intentional infliction of emotional distress because it is barred by the PLRA for failure to allege physical injury in connection with the distress. They also argue for dismissal of Plaintiff's tort claims because they are beyond the scope of relief under § 1983. In the alternative, Defendants move for summary judgment because there are no genuine issues of material fact. They assert with supporting affidavits that Plaintiff did not exhaust available administrative remedies, that reasonable force was used in a good-faith effort to maintain discipline, that Plaintiff was not denied medical care, and the disciplinary report written by Defendant Walter was based in truth.

We recommend that Plaintiff's Complaint be dismissed without prejudice for failure to exhaust available administrative remedies. As a result, we do not address Defendants' alternative theories for dismissal and for summary judgment.

# I. MOTION TO DISMISS

## A. Standard of Review for Motion to Dismiss

The Court of Appeals for the Eighth Circuit has provided this standard for the consideration of a Motion to Dismiss pursuant to Rule 12(b)(6):

> [A] motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Thomas W. Garland, Inc. v. City of St. Louis, 596 F.2d 784, 787 (8th Cir.), cert. denied, 444 U.S. 899, 100 S. Ct. 208, 62 L.Ed.2d 135 (1979). We must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader. United States v. Mississippi, 380 U.S. 128, 143, 85 S. Ct. 808, 816, 13 L.Ed.2d 717 (1965); see also Bennett v. Berg, 685 F.2d 1053, 1058-59 (8th Cir. 1983); Bramlet v. Wilson, 495 F.2d 714, 717 (8th Cir. 1974).

Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986); accord Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In considering a motion to dismiss, courts accept a plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences. Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997). The Court may not consider materials outside the pleadings on a motion to dismiss. Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992). However, it is well-established that the Court may review the entirety of documents attached to the Complaint. Morton, 793 F.2d at 187; see also Fed. R. Civ. P. 10(c)("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.")

Courts generally hold pro se plaintiffs to a less stringent standard than lawyers in drafting pleadings. Cruz v. Cardwell, 486 F.2d 550, 552 (8th Cir. 1973).

However, pro se pleadings must not simply state vague or conclusory allegations, they must set forth facts which, if taken as true, state a claim as a matter of law. Johnson v. Stark, 717 F.2d 1550, 1552 (8th Cir. 1983).

**B. Exhaustion of Remedies Under the PLRA**

Prior to bringing his § 1983 civil rights claim, Plaintiff must exhaust administrative remedies available to him at PCF. Exhaustion of remedies is not optional. The PLRA states that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). See also, McAlphin v. Morgan et al., 216 F.3d 680, 682 (8th Cir. 2000).

The Court of Appeals for the Eight Circuit recently held in McAlphin v. Morgan that in order to satisfy the requirements of § 1997e(a), a prisoner must allege in his Complaint that he "exhausted all available administrative remedies" and "should attach to his § 1983 complaint the administrative decision, it if is available, showing the administrative disposition of his complaint." See McAlphin, 216 F.3d at 682 (quoting Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1998)(per curiam). Like the Plaintiff in the instant case, the plaintiff in that case, James McAlphin, was also pro se. A plaintiff who does not present this evidence to the district court fails to satisfy his or her burden of showing that administrative remedies have been exhausted. Such a complaint fails to state a claim upon which a court can grant relief and should be dismissed without prejudice. See id.

The PLRA's exhaustion requirement applies to Plaintiff's Complaint because it constitutes an action brought "with respect to prison conditions under section 1983...by a prisoner confined in any jail, prison or other correctional facility." 42 U.S.C. § 1997e(a). Clearly Plaintiff is a prisoner confined in a correctional facility attempting to bring an action under 42 U.S.C. § 1983. His Complaint states that he is a prisoner at PCF and that he seeks relief under 42 U.S.C. § 1983. [Docket No. 7, ¶¶ 3 and 2].

Furthermore, Plaintiff's allegations constitute an action with respect to prison conditions. An action "with respect to prison conditions" is defined in 18 U.S.C. § 3626, also enacted as part of the PLRA, as follows: "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2). See also Castano v. Nebraska Department of Corrections, 201 F.3d 1023, 1024 (8th Cir. 2000) (rehearing and rehearing en banc denied) (using 18 U.S.C. § 3626(g)(2) to define an action with respect to prison conditions for purposes of 42 U.S.C. § 1997e(a)). The facts alleged by Plaintiff clearly involve the effects of actions by prison officials, Defendants, on the life of a person confined in prison, Plaintiff.[2] His allegations stem from an allegedly libelous disciplinary report, allegations of a macing, beating, and subsequent denial of medical care, and possible withholding of mail and files by Defendant Ehrenberg. Complaints by inmates alleging assault or other misconduct by prison officers have been held by the

---

2

The fact that Defendants are officials at a privately run prison and not "government officials" is immaterial. The PLRA applies to a correctional facility that provides services on behalf of any State. See 42 U.S.C. 1997(1)(A)(B)(ii). Here, The Corrections Corporation of America, Defendants' employer, contracted with the State of Hawaii to provide correctional services.

Eighth Circuit to concern 'prison conditions' and are subject to the exhaustion requirement. See McAlphin v. Morgan et al., 216 F.3d 680, 682 (8th Cir. 2000) (plaintiff's allegation, among other things, that correctional officers assaulted him was considered a 'prison condition' subject to the exhaustion requirement). See also Brown v. Toombs, 139 F.3d 1102, 1103 (6th Cir. (per curiam) (prisoner's claims including denial of medical care, the use of bed restraints, denial of food, water, toilets, and interference with legal mail were considered 'prison conditions' subject to the exhaustion requirement).

"Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court.'" Alexander v Hawk, 159 F.3d at 1321, 1324 (11th Cir. 1998)(quoting 141 Cong. Rec. H1472-06, *H1480 (daily ed. Feb. 9, 1995)). The Court of Appeals for the Eighth Circuit has identified at least four valuable objectives that are generally promoted by an exhaustion requirement. First, it helps to ensure a more complete development of the factual record before the matter is brought into court. Second, it gives the court the benefit of whatever special knowledge and experience the administrative agency, (in this case the prison), might have to offer. Third, it acknowledges the autonomy and authority of administrative agencies, (and prison officials). Finally, to the extent that claims can be resolved at the administrative level, an exhaustion requirement promotes judicial economy. Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976). See also, McCarthy v. Madigan, 503 U.S. 140, 145 (1992). When a litigant fails to satisfy an exhaustion of administrative remedies requirement, he deprives the judicial process of these valuable benefits.

Plaintiff's Complaint makes allegations that range from a beating to intercepting his mail. In determining this matter, a court could greatly benefit from a more complete factual record and the special knowledge of the grievance administrator. More important, by exhausting administrative remedies, some or all of Plaintiff's complaints may be resolved at the administrative level.

Defendants' evidentiary submissions show that there were administrative remedy procedures in place at PCF at the time of the events giving rise to Plaintiff's present claims.[3] This Court may look at evidentiary submissions for purposes of a motion to dismiss in order to make findings of fact on the question of exhaustion. <u>See</u> <u>Chelette v. Harris</u>, 2000 WL 1496624 at *2 (holding that a district court could examine the affidavit of the Grievance Coordinator and the plaintiff's response to a motion to dismiss to determine whether the plaintiff exhausted his available remedies). Plaintiff used the procedure on a prior occasion for an unrelated incident [Docket No. 16] and further acknowledges his awareness of the grievance procedure by asserting that the system is inadequate. [Docket No. 7, ¶¶ 18 and 19]. PCF's grievance procedures are applicable to

---

3

Under the PCF administrative remedy program (Policy 14-102), the inmate must first submit his "informal complaint" to any staff member. [Docket No. 16]. If the issue is not resolved, the inmate commences the three-tiered administrative remedy procedure by filing a written "formal grievance" with a case manager. If dissatisfied with the response, the inmate may take the grievance up to Step 2 and file a complaint with the Inmate Grievance Manager. If still unsatisfied, Step 3 allows the inmate may submit a complaint to the Warden who reviews the inmate's grievance and either terminates the process or grants the inmate relief. PCF's program also provides for emergency grievance procedures which must be responded to within 48 hours. This is the final administrative appeal provided under the administrative remedy process. The procedures prescribe certain time limits within which inmates must act and prison officials must respond. There also are special provisions governing emergency situations.

a broad range of complaints, including those regarding policies applicable within the institution, a condition in the institution, an action involving an inmate, or an a incident occurring within the institution. [Docket No. 16, Policy, p. 1]. Thus, PCF's grievance procedure applies to the incident Plaintiff describes, and is available.

Plaintiff has not provided the Court with any evidence that he has utilized the grievance procedures available to him at PCF. Plaintiff also does not allege facts which would excuse him from exhausting administrative remedies. Plaintiff makes allegations about the administrative review system which, generously construed, amount to an argument that exhausting administrative remedies would have been futile. He states in his Complaint that the review system is so "untimely and cursory as to be ineffective" and that it "permit[s] and tolerate[s] the unreasonable and excessive use of force by Defendants." [Docket No. 7, ¶ 18]. He further asserts that "excessive and unreasonable use of force would not be aggressively, honestly, and properly investigated with the foreseeable result that Defendants are more likely to use excessive force against Plaintiff and others in the future." [Docket No. 7, ¶ 19]. Plaintiff says nothing further about the grievance procedure in his Complaint, or in his Objection to Defendants' Motion [Docket No. 19].

Even if some type of "futility exception" were generally available, Plaintiff would not be eligible for it because he has not shown that it would have been futile for him to pursue administrative relief for the claims that he is now attempting to advance. He has offered nothing more than his own unsubstantiated supposition that prison officials would not have addressed his grievances if he had availed himself of PCF's administrative remedy procedures. Plaintiff's subjective beliefs regarding the efficacy of the process are

immaterial. The Eighth Circuit recently stated: "Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." Chelette v. Harris, 2000 WL 1496624 at *3 (8th Cir. Oct. 10, 2000).

Plaintiff also asserts, in his original Complaint, that he did not use the grievance procedure because it "does not apply where facility is not listed by Bureau of Prisons" and cites Huguenin v. Ponte, 29 F. Supp.2d 57 (D.R.I. 1998). [Docket No. 1]. In Huguenin, the U.S. District Court for the District of Rhode Island held that a group of plaintiffs did not need to exhaust administrative remedies as required by the Federal Bureau of Prisons regulations under 28 C.F.R. § 542.10 because the prison in which they were housed was not included in a list of prisons to which the Bureau of Prisons regulations applied. See Huguenin, 29 F. Supp.2d at 67.

Plaintiff incorrectly interprets Huguenin to mean that § 1997e(a)'s exhaustion requirement likewise does not apply to him because PCF does not fall within a list of prisons to which the Bureau of Prisons regulations apply. However, the regulations at issue in Huguenin have no bearing on the exhaustion requirement of § 1997e(a). The regulation at issue in that case, 28 C.F.R. § 542, describes the administrative remedies available to inmates in prisons operated by the Federal Bureau of Prisons. Section 542.10 states that those administrative remedies only apply to prisons operated by the Federal Bureau of Prisons, specifically listed in § 542. Neither of the regulations pertain to Plaintiff or PCF because PCF is not operated by the Federal Bureau of Prisons and has its own set of administrative remedies available to inmates. Plaintiff need not exhaust remedies that

do not apply to him, such as those in § 542, but Plaintiff must exhaust remedies that are available to him in accordance with § 1997e(a).

Because 42 U.S.C. § 1997e(a) only requires that "available" remedies must be exhausted, some courts have concluded that if monetary compensation is not available under a prison's grievance procedures, then a prisoner seeking money damages need not exhaust such procedures. See Rumbles v Hill, 182 F.3d 1064, 1069 (9th Cir. 1999) ("Exhaustion of administrative remedies under section 1997e(a) is not required if a prisoner's section 1983 claim seeks only money damages and if the correctional facility's administrative grievance process does not allow for such an award"); See also Garrett v. Hawk, 127 F.3d 1263, 1267 (10th Cir. 1997); Hollimon v. DeTella, 6 F. Supp.2d 968, 970 (N.D. Ill. 1998); Davis v. Woehrer, 32 F. Supp.2d 1078, 1079 (E.D. Wis. 1999).

This Court recommends that the District Court follow the holding of a growing number of courts which have concluded that exhaustion is required even if an inmate is seeking money damages, and such relief is not available under his prison's grievance program. See Perez v. Wisconsin Department of Corrections, 182 F.3d 532, 537 (7th Cir. 1999); Alexander, 159 F.3d at 1326-28; Cruz v. Jordan, 98 CIV 0363 (AKH) (S.D.N.Y. July 28, 1999), 1999 WL 553776 at *10; Beeson v. Fishkill Correctional Facility, 28 F. Supp.2d 884 (S.D.N.Y. 1998); Smith v. Stubblefield, 30 F. Supp.2d at 1174. These courts have reasoned that "the statutory question is whether any 'remedies' are available," not whether the particular form of relief sought by an aggrieved inmate is available. Perez,182 F.3d at 537 (emphasis added). See also, Alexander, 159 F.3d at 1326. These courts have further reasoned that "[s]ection 1997e would not be worth much if prisoners

could evade it simply by asking for relief that the administrative remedy process is unable to provide." Perez, 1999 WL 424311 at * 5.

Keeping in mind the purposes of exhausting administrative remedies, courts have also recognized that requiring a prisoner to exhaust his administrative remedies can be a useful undertaking, even if the inmate cannot obtain the monetary relief he is seeking. See Alexander, 159 F.3d at 1327. Completing the grievance process may, for example, solve an ongoing problem and thereby serve the purpose of mitigating damages. See id. The use of a grievance process can also provide a helpful factual record, even if it cannot provide compensatory damages. Based on these considerations, the Court concludes that the instant Plaintiff would have been required to exhaust his administrative remedies even if some of the relief he was seeking, (i.e., money damages), were not available under PCF's grievance procedures.

A party who is unable to exhaust administrative remedies by reason of untimely application is procedurally defaulted and he cannot bring the claim to federal court absent a showing of "cause and prejudice". See Brown v. Armontrout, 853 F.2d 624, 626 (8th Cir. 1988) (prisoner claim procedurally defaulted where prisoner failed to advance state remedies before seeking habeas relief and those remedies were no longer available); see also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 -61 (3d Cir. 1986) (prisoner claim procedurally defaulted where prisoner's final appeal to the Bureau of Prison's General Counsel was untimely); see also Sanchez v. Miller, 792 F.2d 694, 697-99 (7th Cir. 1986), cert. denied, 479 U.S. 1056 (1987) (prisoner claim procedurally defaulted where prisoner did not complete administrative appeal process before seeking habeas

relief, and deadline for completing that process expired before habeas petition was adjudicated).

Procedurally defaulted claims will not be entertained in federal court, unless the prisoner litigant is able to show "cause" for his default, as well as actual prejudice resulting from the default. See Brown, 853 F.2d at 626; Moscato, 98 F.3d at 761-62; Sanchez, 792 F.2d at 697-99. In order to satisfy the "cause" requirement, a prisoner must show that some "external impediment" prevented him from satisfying the exhaustion of administrative remedies requirement in a proper and timely manner. See Moscato, 98 F.3d at 762 (petitioner could not satisfy cause requirement where he failed "to allege the existence of an external impediment" or that "anything other than [his own] dilatoriness caused the [administrative] appeal to be filed late"). "'[C]ause' under the cause and prejudice test is something external to the petitioner, something that cannot fairly be attributed to him... [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available...or that some interference by officials made compliance impracticable.'" Coleman v. Thompson, 501 U.S. 722, 753 (1991) (emphasis in original), quoting Murray v. Carrier, 477 U.S. 478, 488 (1986).

The remaining issue is how to properly frame the Order deciding the Motions. On this issue, we recommend that the District Court follow the course prescribed by the Eleventh Circuit Court of Appeals in its decision in Harper v. Jenkin, 179 F.3d 1311 (11th Cir. July 1, 1999), (per curiam). In Harper, a Georgia state prisoner filed a § 1983 action claiming that prison officials had violated his Eighth Amendment rights by denying him adequate medical care. Although the prisoner had sought relief through the prison

grievance program, his grievance had been rejected because it was untimely. In his federal court action, the prisoner contended that he had satisfied the exhaustion requirement of § 1997e(a) because there no longer were any administrative remedies available to him. Both the district court and the Court of Appeals determined that the Georgia State Prison Inmate Grievance Procedure "allows the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown..." [and] [s]ince [the prisoner] has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies." Id. at 1312. Both the trial court and the appellate court pointed out that "[i]f we were to accept [the prisoner's] position -- that the filing of an untimely grievance exhausts an inmate's administrative remedies -- inmates...could ignore the PLRA's exhaustion requirement and still gain access to federal courts merely by filing an untimely grievance." Id.

In Harper, The Court concluded that the prisoner's action should be dismissed without prejudice, so that the prisoner could attempt to satisfy the exhaustion requirement by seeking leave to file a belated grievance. See id. The PCF grievance program, like the one in Harper, provides that "an extension [for pursuing a grievance] may be granted by the inmate's Case Manager at his/her discretion." [Docket No. 16, Policy, p. 3]. Because Plaintiff may still seek permission to file a late grievance, this action should be dismissed without prejudice.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that Defendants' Motion to Dismiss [Docket No. 14] be granted, and that Plaintiff's Complaint be dismissed without prejudice.

Dated: November 8, 2000

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before November 26, 2000 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before November 26, 2000.